**MICHAEL E. DURONSLET**      \*      **NO. 2022-CA-0019**

**VERSUS**     \*

    **COURT OF APPEAL**

**WAL-MART STORES, INC.**     \*
**AND MARLIN N. GUSMAN,**     **FOURTH CIRCUIT**
**SHERIFF FOR PARISH OF**     \*
**ORLEANS**     **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-05958, DIVISION "B-5"
Honorable Rachael Johnson
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Dale N. Atkins)

BELSOME, J., DISSENTS WITH REASONS

Vallerie Lynn Oxner
ATTORNEY AT LAW
3500 North Hullen Street, Suite 17-A
Metairie, LA 70002

    COUNSEL FOR PLAINTIFF/APPELLANT, Michael E. Duronslet

Isidro Rene' DeRojas
Christopher James-Lomax
McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch
909 Poydras Street, Suite 1000
New Orleans, LA 70012

    COUNSEL FOR DEFENDANT/APPELLEE, Walmart Inc. (f/k/a Wal-Mart Stores, Inc.)

**AFFIRMED**
**July 27, 2022**

This is an alleged personal injury case that also maintains claims asserting violations of La. R.S. 51:1401, *et seq.*, which contain the Louisiana Unfair Trade Practices and Consumer Protection Law; La. R.S. 51:2247, *et seq.*, which prohibit discriminatory practices in public accommodations; and the United States Constitution. Appellant, Michael E. Duronslet (hereinafter "Mr. Duronslet"), appeals the trial court's July 30, 2021 judgment, which granted the Motion for Partial Summary Judgment filed by Appellee, Walmart, Inc. (hereinafter "Walmart").[1] For the following reasons, we affirm the trial court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *June 20, 2017 Petition*

Mr. Duronslet initiated this legal proceeding with the filing of a Petition in the Civil District Court for the Parish of Orleans on June 20, 2017. He named Walmart and Marlin Gusman, in his capacity as Sheriff of the Parish of Orleans, as defendants. In the Petition, Mr. Duronslet stated that he went to the Walmart store located on Chef Menteur Highway in New Orleans, Louisiana, on the evening of

---

[1] In his Petition, which is discussed more fully hereinafter, Mr. Duronslet named "Wal-Mart Stores, Inc." as one of the defendants. The record indicates that "Wal-Mart Stores, Inc." is now known as "Walmart, Inc." This Opinion will use a shortened version with the spelling "Walmart."

1

June 23, 2016, for the purpose of picking up a prescription from the pharmacy inside the store. According to the Petition, after Mr. Duronslet picked up his prescription, he realized that the prescription was only "partially filled;" so Mr. Duronslet tried to communicate with the pharmacist, "who was closing down for the night, [and] ignore[d] [Mr. Duronslet]." Mr. Duronslet further alleged in the Petition that he "also asked to speak to the manager," who "did not respond."

Mr. Duronslet contended in the Petition that thereafter a Walmart employee called for an Orleans Parish Sheriff's deputy who was working a security detail at the store. In the Petition, Mr. Duronslet asserted that subsequently:

> The Orleans Parish Sheriff's deputy, without provocation, grabbed the plaintiff,[2] threw the plaintiff on the floor, pushed his knee into the plaintiff's back, and handcuffed the plaintiff.
>
> . . . .
>
> The Sheriff's deputy then took the plaintiff into a private room where he and an employee of [Walmart] threatened to arrest the plaintiff unless he signed a Notification of Restriction from Property stating that the plaintiff was prohibited from entering any [Walmart] store, and advising him that he is no longer allowed on property owned by [Walmart]. The Notification of Restriction [from] Property also stated that if he entered a [Walmart] store, he could be charged with criminal trespass.

Mr. Duronslet alleged in the Petition that though he signed the Notification of Restriction from Property (hereinafter "Notification"), he did so "under duress."

In pertinent part, in the Petition, Mr. Duronslet also asserted that the deputy "was at all times subject to the direction and control of [Walmart], and his actions were therefore performed in the course and scope of his employment with [Walmart]." Additionally, Mr. Duronslet alleged that he sustained injuries to his back and shoulder, as well as embarrassment, humiliation, and mental anguish. He

---

[2] In the Petition, "plaintiff" refers to Mr. Duronslet.

2

contended that Walmart violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq*; discriminated against him in violation of La. R.S. 51:2247, *et seq*.;[3] and deprived him of his rights, privileges, and immunities guaranteed by the United States Constitution.

### *Walmart's October 18, 2019 Third-Party Demand*

On October 18, 2019, Walmart filed a "Motion for Leave to File Third-Party Demand," (hereinafter "Third-Party Demand") wherein Walmart alleged that "U.S. Security Associates, Inc. [(hereinafter "U.S. Security")], an independent third party contractor, was the employer of the Orleans Parish Sheriff's Deputy involved in [Mr. Duronslet]'s incident" and that the deputy "was assigned to work a paid security detail at the Chef Menteur Highway Walmart." Additionally, Walmart asserted that "[a]t all relevant times, a Security Services Master Agreement [(hereinafter "Security Agreement")] existed between Walmart and U.S. Security" whereby U.S. Security agreed to provide security services to Walmart. Walmart attached the Security Agreement and a "Security Services Addendum to the Security Services & Systems Master Agreement" (hereinafter "Addendum") as exhibits to the Third- Party Demand.

### *Security Agreement*

The Security Agreement between Walmart and U.S. Security provided, in pertinent part:[4]

> **THIS SECURITY SERVICES MASTER AGREEMENT** ("Contract") is made this 1st day of October, 2004, by and between

---

[3] Louisiana Revised Statutes 51:2247 is titled "[p]ublic accommodations, resorts, amusements; discriminatory practices prohibited." It is found in Chapter 38 ("Louisiana Commission on Human Rights") of Title 51 ("Trade and Commerce") of the Louisiana Revised Statutes.

[4] The Security Agreement refers to U.S. Security as "Contractor."

3

[Walmart], its subsidiaries, divisions, stores, and affiliated companies . . . and U.S. Security . . . . ("Contractor").

. . . .

1. DESCRIPTION OF SERVICES. Contractor shall perform, on a non-exclusive basis, all security services as more fully described on the applicable ADDENDUM(S), and for the specific locations, identified in the applicable ADDENDUM(S), attached to and incorporated in, this Contract (the "Services"). As used herein, the term "Contract" shall include this Master Agreement and each ADDENDUM(S) hereto. All Services shall be performed in strict accordance with the provisions and terms of this Contract. . . .

2. Term. This contract shall be in force for one (1) year from the Effective Date (as defined herein) and shall continue thereafter on a month-to-month basis on the same terms and conditions, until terminated by either party. Each party may terminate this contract or any month-to-month extension thereof without cause with thirty (30) days' prior written notice specifying the date this termination is to be effective. The "Effective Date" shall mean the date on which this [Security Agreement] is executed by an authorized officer of [Walmart]. . . . In the event of a material breach by Contractor, [Walmart] reserves the right to terminate this Contract immediately. The parties acknowledge and agree that both parties have the absolute right to either terminate this Contract in its entirety or to terminate one or more ADDENDA, and any reference herein to the right to terminate this Contract shall be deemed to provide such party with such partial termination rights.

3. PRICE AND PAYMENT. [Walmart] shall pay to Contractor for its performance of the Services the rates in the schedule set forth in the ADDENDUM(S). . . .

4. INDEPENDENT CONTRACTORS. [Walmart] and Contractor enter into this Contract as independent contractors and at arms' length. Neither [Walmart] nor Contractor has the right, and shall not seek, to exercise any control over the other party, its employees, or its agents. Contractor shall control the methodology for performing the Services to meet [Walmart]'s specifications and Contractor's Scope of Work in the ADDENDUM(S). Each party shall be solely responsible for hiring, firing, promoting, demoting, rates of pay, benefits, and other terms and conditions in regard to its own employees. Neither Contractor nor any of its employees or agents may be considered [Walmart]'s agents or employees for any purpose and have no authority to act or purport to act on [Walmart]'s behalf. Neither Contractor nor its employees or agents are entitled to receive any benefits, including but not limited to salary, vacation pay, sick leave, retirement benefits, social security, workers' compensation,

4

health, disability, unemployment, and stock options, that [Walmart] may provide to its employees.

. . . .

6. QUALITY OF SERVICES. Day-to-Day and operational management of the Services shall be within the sole control of Contractor. Contractor shall perform the Services in a professional and workman-like manner. . . . Services must meet the approval of [Walmart] and shall be subject to [Walmart]'s general right of inspection and supervision to secure the satisfactory completion thereof. Contractor shall use the best practices acknowledged in the industry and shall adhere to [Walmart]'s policies and specifications regarding the Services. . . .

. . . .

10. EQUIPMENT. Contractor shall provide all necessary equipment, including equipment repair and maintenance, to perform the Services. . . .

The Controller of U.S. Security and the Vice President, Global Security, of Walmart signed the Security Agreement on October 24 and 26, 2004, respectively. Attached to the Security Agreement is the Addendum.

*Addendum*

The Addendum, which is dated October 13, 2015, provided, in pertinent part, that U.S. Security would provide security services at the Walmart store located on Chef Menteur Highway in New Orleans, Louisiana, with a start date of July 7, 2014. Further, it stated that U.S. Security "shall equip all security guard(s) performing services under this Addendum with Contractor's standard company issued uniform, attire, operating supplies, and equipment for security guards." The Addendum called for U.S. Security to provide one law enforcement officer per shift whose guard "duties will be to staff a post at the front entrance or periodically walk around the sales floor as directed by the store management team, providing a visible deterrent to criminal activity." In performance of the duties, the Addendum

5

explained that the guard "may take any precaution the security guard(s), in their professional judgment, determine is necessary to protect themselves, customers, and [Walmart] associates." Additionally, the Addendum provided the rate of pay for the guards. The Senior Vice President of U.S. Security and the Director, Security and Risk, of Walmart signed the Addendum on November 2 and 17, 2015, respectively.

***Mr. Duronslet's July 20, 2020 Deposition***

On July 20, 2020, Mr. Duronslet submitted to a deposition, at which he testified that he went to the Walmart store on Chef Menteur in New Orleans on June 23, 2016, to pick up a prescription. He stated that he asked for the prescription; two pharmacy employees, one of which he identified as male and the other he identified as female, did not give him the prescription; he waited and "[a]t least 15 minutes" passed; and then the two pharmacy employees "were packing up to leave" and "walked to the door" to leave the pharmacy without acknowledging him.[5] Mr. Duronslet explained that he then "kept asking" the pharmacy employees "[a]t least five times" for his medicine but that they "pretty much kept walking." Mr. Duronslet testified that he "kept [] trying to make sure that they saw [him]. So [he] would occasionally get right in front of [the male pharmacy employee and] . . . was trying to get [his] face to where [the male pharmacy employee] could see [him] because [the male pharmacy employee] acted like he [could not] hear [Mr. Duronslet]." Mr. Duronslet stated that, thereafter, the female pharmacy employee

---

[5] Mr. Duronslet's deposition testimony indicated that he did not receive his prescription prior to the pharmacy employees leaving, whereas his Petition alleged that he received his prescription prior to the pharmacy employees leaving but that the prescription was only partially filled.

6

alleged aloud that Mr. Duronslet grabbed the male pharmacy employee and then "[s]he left."

Mr. Duronslet testified that subsequently, "there was a scene" with "50" other customers watching because he "was being very loud;" was "probably" yelling; called out "loud[ly]" asking to speak to a manager; and could be heard by other people in the store. He explained that a deputy arrived at the scene. Mr. Duronslet testified that he "[did not] know" what brought the deputy to the scene and could not affirmatively say that a Walmart employee asked the deputy to the scene. Further, Mr. Duronslet stated that he "[did not] think" the deputy was standing with any Walmart employees when the deputy arrived at the scene. He testified that subsequently "there was some sort of interaction with a guy who was around that area and the [deputy]" but when asked whether the man was a Walmart employee, Mr. Duronslet responded, "I really [do not] know." Mr. Duronslet stated that the deputy called him over and thereafter "[the deputy] grabbed [him]" and that "there was some physical contact with [the deputy]" which resulted in Mr. Duronslet "going on the floor . . . ." He explained that afterward the deputy placed him in handcuffs. Mr. Duronslet testified that he did not hear any Walmart employee request or suggest that the deputy make physical contact with him or put him in handcuffs. Additionally, when asked whether "any Walmart personnel [were] around" during the "altercation," Mr. Duronslet responded, "I [cannot] answer that."

After describing the alleged physical contact, Mr. Duronslet testified that the deputy "indicated he wanted [Mr. Duronslet] to go with him to [the] security office" inside the Walmart. Mr. Duronslet explained that the deputy physically escorted him to the security office and that he thought a Walmart employee came

into the security office only after he and the deputy arrived but that he "[could not] exactly remember" that a Walmart employee accompanied them on the walk to the security office. He testified that the deputy "wanted" him to sign the Notification; and Mr. Duronslet stated that no Walmart employee was involved in asking him to sign the Notification. When asked to clarify whether there was a Walmart employee inside the security office with him and the deputy, Mr. Duronslet explained that "[I am] [] nebulous about that . . . because they were not engaged. There may have been somebody there, but there was no conversation, no interaction. [It is] almost like maybe they might have been there to put a coat on or something and then left." Mr. Duronslet testified that after signing the Notification, "that was the end of it," and he went home.

***Walmart's April 23, 2021 Motion for Partial Summary Judgment***

On April 23, 2021, Walmart filed a "Motion for Partial Summary Judgment." In its Memorandum in Support, Walmart contended, in pertinent part, that "[U.S. Security], an independent party contractor, was the employer of the Orleans Parish Sheriff's Deputy involved in [Mr. Duronslet]'s incident . . . ." Walmart argued that it was not an employer of the deputy; instead, Walmart asserted that the deputy was an independent contractor. Additionally, Walmart contended that as a principal, rather than an employer, it was not vicariously liable for the actions of the deputy as an independent contractor. In support of its contention that U.S. Security and, by extension, U.S. Security's employees were independent contractors, Walmart then recited the previously-quoted "Independent Contractor" section of the Security Agreement. In sum, Walmart argued that summary judgment was appropriate and that Walmart was not liable for the deputy's alleged actions because "based on the unambiguous language in the

8

[Security Agreement,]" U.S. Security and its employees were independent contractors of Walmart.

Attached to the Motion for Partial Summary Judgment as exhibits were the transcript of Mr. Duronslet's July 20, 2020 deposition; the Security Agreement; and the Addendum. Additionally, Walmart attached an affidavit from David Russell Hinds, who identified himself as the Senior Manager of Facility Security for Walmart. In his affidavit, Mr. Hinds stated that the Security Services Agreement and Addendum are kept in the ordinary course of business at Walmart. Further, he stated that the Security Services Agreement and Addendum were in effect at the time of the subject incident.

### Mr. Duronslet's July 7, 2021 Opposition to Walmart's Motion for Partial Summary Judgment and Affidavit

On July 7, 2021, Mr. Duronslet filed a "Memorandum in Opposition to Motion for Partial Summary Judgment" (hereinafter "Opposition"). Therein he argued that genuine issues of material fact made the granting of summary judgment improper. In particular he contended that the deputy's work was not of an independent nature and that Walmart retained the right of control. He further asserted that the deputy "had the apparent authority to act on behalf of [Walmart]."

Attached to his Opposition was an affidavit by Mr. Duronslet, which was dated July 7, 2021. In the affidavit, Mr. Duronslet stated, in pertinent part, that on the date of the subject incident, "[w]hen the pharmacist continued to ignore him, [he] asked to speak to a manager, [who] did not respond" and that the deputy responded to Mr. Duronslet after the manager did not respond. Regarding the contact the deputy allegedly made with him, Mr. Duronslet provided that "[t]he actions of the deputy took place in full view of [Walmart] employees who failed to

9

intervene and who tacitly consented to the [] actions." Further, Mr. Duronslet stated in the affidavit that "[t]here were [Walmart] employees in the [security] office during the time that [Mr. Duronslet] was restrained, and during which he was forced to sign the [Notification] by the deputy. The [Walmart] employees all saw and heard everything that took place, and none intervened to stop the deputy." Additionally, Mr. Duronslet contended in his affidavit that "[t]he tacit acceptance . . . by the [Walmart] employees indicated to [Mr. Duronslet] that the deputy had the apparent authority to act on behalf of [Walmart] to restrict [Mr. Duronslet]'s access to any [Walmart] property." The trial court considered Walmart's Motion for Partial Summary Judgment and Mr. Duronslet's Opposition at a hearing on July 22, 2021.

### July 22, 2021 Hearing on Walmart's Motion for Partial Summary Judgment

On July 22, 2021, the trial court conducted a hearing on Walmart's Motion for Partial Summary Judgment. At the close of the hearing the trial court stated, in pertinent part, that "the security contract is clear and unambiguous as it relates to this independent contractor. [N]othing in the record . . . dispute[s] this. He is not a Walmart employee. . . [T]he issue is appropriate for summary judgment."

### July 30, 2021 Judgment

On July 30, 2021, the trial court signed a judgment, which granted Walmart's Motion for Partial Summary Judgment and dismissed with prejudice Mr. Duronslet's claims against Walmart. The judgment stated:

> This matter came on for hearing on the 22nd day of July, 2021 on the Motion for Partial Summary Judgment filed by Defendant, Walmart Inc., f/k/a Wal-Mart Stores, Inc. (hereinafter referred to as "Defendant").
>
> . . . .

Based upon the motion, the argument of counsel, the entire record, and the law, the Court being of the opinion that the law and evidence are in favor of the Defendant, Walmart []:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion for Partial Summary Judgment of Defendant, Walmart [], is **GRANTED** and all of Plaintiff's claims against Defendant, Walmart [], are **DISMISSED** with prejudice, at Plaintiff's costs.

Mr. Duronslet's timely appeal of the judgment follows.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Duronslet raises three assignments of error:

1.  The trial court erred in finding that the issue of whether the deputy in this case is an independent contractor is an issue that is appropriate for summary judgment.

2.  The trial court erred in finding that the contract between [Walmart] and U.S. Security [] was dispositive of the issue of whether the deputy was an independent contractor.

3.  The trial court erred in finding that the Orleans Parish Sheriff's deputy was an independent contractor for whom [Walmart] had no liability.

Before considering the merits of the parties' arguments, we address two preliminary matters regarding the July 30, 2021 judgment.

## FINAL, APPEALABLE JUDGMENT

Prior to addressing the merits of an appeal, appellate courts have the duty to determine *sua sponte* whether their appellate court jurisdiction has been properly invoked by a valid, final judgment. *Bayer v. Starr Int'l Corp.*, 2017-0257, p. 3 (La. App. 4 Cir. 8/15/17), 226 So.3d 514, 517 (citing *Moon v. City of New Orleans*, 2015-1092, p. 6 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425; *Tsegaye v. City of New Orleans*, 2015-0676, p. 3 (La. App. 4 Cir. 12/18/15), 183 So.3d 705, 710; and *Delta Staff Leasing, LLC v. S. Coast Solar, LLC*, 2014-1328, p. 1 (La. App. 4 Cir. 9/23/15), 176 So.3d 668, 668).

11

***Valid Judgment - Proper Decretal Language***

Louisiana Code of Civil Procedure Article 1918 pertains to the "[f]orm of final judgment." It provides that "[a] final judgment in accordance with Article 1841 shall be identified as such by appropriate language; shall be signed and dated; and shall, in its decree, identify the name of the party in whose favor the relief is awarded, the name of the party against whom the relief is awarded, and the relief that is awarded." That is, "[a] final, appealable judgment must contain the proper decretal language." *Maqubool v. Sewerage & Water Bd. of New Orleans*, 2018-0572, p. 4 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 633. The appellate court "must be able to determine from the judgment itself—without any reference to an extrinsic source—the specific relief granted." *Tsegaye v. City of New Orleans*, 2105-0676, p. 3 (La. App. 4 Cir. 12/18/15), 183 So.3d 705, 710 (citing *Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll. v. Mid City Holdings, L.L.C.*, 2014-0506, p. 3 (La. App. 4 Cir. 10/15/14), 151 So.3d 908, 910).

Here, Appellant seeks review of the judgment rendered by the trial court on July 30, 2021. As excerpted previously, that judgment provides against whom ("Plaintiff") and in whose favor ("Defendant, Walmart") it awards relief. It also provides the relief, which is the grant of Walmart's Motion for Partial Summary Judgment and dismissal of Mr. Duronslet's claims with prejudice. Though Mr. Duronslet is not identified by name in the decree (rather, the decree states that "Plaintiff's claims" are dismissed), use of the word "Plaintiff" indicates that this refers to Mr. Duronslet because he is the only plaintiff in this matter. *Cf. Hill Int'l v. JTS Realty Corp.*, 2021-0157, p. 6 (La. App. 1 Cir. 12/30/21), ___ So.3d ___, ___, 2021 WL 6328321, at *3 (wherein the Louisiana First Circuit Court of Appeal noted that "[i]n cases with multiple plaintiffs or defendants, the failure to name the

plaintiff(s) or defendant(s) for or against whom the judgment is rendered makes the judgment fatally defective because one cannot discern from its face for or against whom it may be enforced."). Thus, the trial court's July 30, 2021 judgment contains the proper decretal language.

***Final Judgment***

Regarding judgments, La. C.C.P. art. 1915 provides, in pertinent part:

A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:

(1) Dismisses the suit as to less than all of the parties, defendants, third party plaintiffs, third party defendants, or intervenors.

. . . .

(3) Grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E).[ ]

. . . .

B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

In discussing La. C.C.P. art. 1915, this Court has explained that it "divides partial judgments into two groups: (1) those under Article 1915 (A), which lists six specific types of partial final judgments that are appealable without being designated as final by the trial court; and (2) those covered by Art. 1915 (B), which provides that any other partial judgment (excluding those listed in Part A) is not deemed to be final, and not subject to appeal, unless the trial court designates it as

such." *Cent. Bldg. Servs., LLC v. St. Augustine High Sch., Inc.*, 2018-0427, pp. 2-3 (La. App. 4 Cir. 10/17/18), 258 So.3d 103, 105 (quoting *Andrew Paul Gerber Testamentary Trust v. Flettrich*, 2016-0065, pp. 4-5 (La. App. 4 Cir. 11/2/16), 204 So.3d 634, 637-38).

A trial court's grant of a motion for summary judgment is considered a final judgment per La. C.C.P. art. 1915(A)(3) "as long as it is not a partial summary judgment on a particular theory or defense." *Anderson v. Laborde Constr. Indus.*, L.L.C., 2019-0356, 2018-1583, p. 9 (La. App. 1 Cir. 3/12/20), 311 So.3d 1072, 1079 n.9. If the grant of the motion for summary judgment concerns a particular theory or defense, then "the judgment shall not constitute a final judgment unless it is designated as a final judgment . . . ." La. C.C.P. art. 1915(B)(1). However, if the trial court's grant of a motion for summary judgment dismisses all of the claims against a particular party, then it qualifies as a final judgment under La. C.C.P. art. 1915(A)(1) without the necessity of the trial court designating it as a final judgment. *In re LoCicero*, 2010-0624, p. 4 (La. App. 4 Cir. 10/20/10), 51 So.3d 126, 128 (citing *Jeansonne v. N.Y. Life Ins. Co.*, 2008-0932, pp. 8-9 (La. App. 3 Cir. 5/20/09), 11 So.3d 1160, 1167-68; *Regency Motors of Metairie, L.L.C. v. Hibernia-Rosenthal Ins. Agency, L.L.C.*, 2003-1312, pp. 4-5 (La. App. 5 Cir. 2/23/04), 868 So.2d 905, 907-08).

The July 30, 2021 judgment that Mr. Duronslet appeals herein states that "all of Plaintiff's claims against [Walmart] are **DISMISSED** with prejudice, at Plaintiff's costs." The foregoing language demonstrates that the judgment dismisses all of the claims against Walmart. Thus, it qualifies as a final judgment subject to appeal under La. C.C.P. art. 1915(A)(1) even though the trial court did not designate it as such. *See In re LoCicero*, 2010-0624, p. 4, 51 So.3d at 128;

14

*Regency Motors of Metairie, L.L.C.*, 2003-1312, pp. 4-5, 868 So.2d at 907-08. Thus, we conclude that our appellate jurisdiction has been properly invoked by a valid, final judgment and turn to the merits.

**STANDARD OF REVIEW**

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 2021-0419, p. 9 (La. App. 4 Cir. 10/13/21), ___ So.3d ___, ___, 2021 WL 4771758, at *4 (quoting *Pilet v. Pilet Distrubs.*, 2020-0319, p. 5 (La. App. 4 Cir. 12/30/20), 312 So.3d 1154, 1159). On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," then "the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* It is only after the motion has been made and properly supported that the burden shifts from the mover to the adverse party. *Knox*, 2021-0419, p. 10, ___ So.3d ___, ___, 2021

15

WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). Thereafter, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "[I]f the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact" and summary judgment is appropriate. *Knox*, 2021-0419, pp. 9-10, ___ So.3d ___, ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159).

A genuine issue is a triable issue. *Id.* "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* However, "[i]f on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." *Id.* "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.*

"Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Knox*, 2021-0419, p. 10, ___ So.3d ___, ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). Thus, in order to determine whether the trial court's grant of summary judgment was proper in the matter *sub judice*, we turn our analysis to the applicable substantive law regarding independent contractors.

16

**DISCUSSION**

***Assignment of Error Number One: Whether the Determination of the Deputy's Status as an Independent Contractor is an Appropriate Issue for summary Judgment.***

In his first assignment of error, Mr. Duronslet contends that the determination of whether the deputy was an independent contractor is not an appropriate issue for summary judgment.

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315(A). Louisiana courts employ the duty/risk analysis when deciding whether to impose liability under La. C.C. art. 2315. *Cosey on Behalf of Hilliard*, 2019-0756, 2019-0785, p. 17 (La. App. 4 Cir. 11/12/20), ___ So.3d ___, ___, 2020 WL 6687515, at *8 (quoting *Moore v. Choice Found.*, 2018-0603, p. 5 (La. App. 4 Cir. 5/29/19), 274 So.3d 33, 37). The duty/risk analysis entails determining whether the plaintiff has proved five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Id.* If a plaintiff fails to prove even one of the duty/risk analysis elements, the defendant is not liable. *James v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 2018-0198, p. 6 (La. App. 4 Cir. 12/26/18), 262 So.3d 958, 963 (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095, p. 7 (La. 3/10/06), 923 So.2d 627, 633).

The threshold determination in a negligence action is the first element, i.e., whether the defendant owed a duty to the plaintiff. *Id.*, 2018-0198, p. 7, 262 So.3d at 964 (quoting *Ponceti v. First Lake Props., Inc.*, 2011-2711, p. 2 (La. 7/2/12), 93 So.3d 1251, 1252). Louisiana Civil Code Article 2320 establishes the duty element for employers by enumerating the doctrine of respondeat superior, by which "employers are answerable for the damage occasioned by their employees 'in the exercise of the functions in which they are employed.'" *Grabowski v. Smith & Nephew, Inc.*, 2014-0433, 2013-1409, p. 24 (La. App. 3 Cir. 10/1/14), 149 So.3d 899, 915 (quoting La. C.C. art. 2320). "[H]owever, a principal is not liable for any actions by an independent contractor." *Hendricks v. United Cab, Inc.*, 1996-1777, p. 2 (La. App. 4 Cir. 1/15/97), 687 So.2d 610, 611. Except that a principal is liable if an independent contractor performed ultra-hazardous work or if the principal reserved the right to supervise or control the independent contractor's work. *James*, 2018-0198, p. 7, 262 So.3d at 964 (citing *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-0477, p. 12 (La. 10/14/15), 181 So.3d 656, 665).

Regarding the duty element of the duty/risk analysis, this Court has held that "[w]hether a duty of care exists in an action for negligence is a question of law that may be determined on a motion for summary judgment." *Martin v. Ill. Cent. R.R. Co.*, 2006-1495, p. 3 (La. App. 4 Cir. 12/19/07), 974 So.2d 741, 743 (citation omitted). *See also Garland v. Beaubouef Co.*, 53,572, p. 5 (La. App. 2 Cir. 9/23/20), 308 So.3d 771, 775 (citing *Allen v. Lockwood*, 2014-1724 (La. 2/13/15), 156 So.3d 650; *Passon v. Fields*, 50,635 (La. App. 2 Cir. 5/18/16), 196 So. 3d 645.). In particular, this Court has also held that "[t]he issue of independent contractor status is a proper subject to be resolved on summary judgment." *Irwin v. Rubens*, 2011-0405, p. 9 (La. App. 4 Cir. 9/7/11), 75 So.3d 952, 956 (quoting

18

*Butler v. Atwood*, 420 So.2d 742, 745 (La. App. 4 Cir. 1982)). Moreover, this Court has upheld a trial court's grant of a motion for summary judgment on the issue of independent contractor status. *See, e.g., Martin*, 2006-1495, p. 4, 7, 974 So.2d at 744-45; *Hendricks*, 1996-1777, p. 4, 687 So.2d at 612. Accordingly, Mr. Duronslet's contention that this issue is not appropriate for resolution via summary judgment has no merit. If there is no genuine issue of material fact, then determination of the deputy's status as either an employee or independent contractor is proper for summary judgment.

***Assignment of Error Number Two: Whether the trial court erred in finding that the contract between Walmart and U.S. Security was dispositive of the issue of whether the deputy was an independent contractor.***

In his second assignment of error, Mr. Duronslet contends that the trial court erred in finding that the Security Agreement and Addendum between Walmart and U.S. Security was dispositive of the issue of whether the deputy was an independent contractor. Because this Court is applying a *de novo* standard of review, it is of no import if the trial court decided the Motion for Partial Summary Judgment solely based on the Security Agreement and the Addendum.

Moreover, Mr. Duronslet's contention is not supported by the record. At the close of the July 22, 2021 hearing, the trial court stated that "the security contract is clear and unambiguous as it relates to this independent contractor. *[N]othing in the record . . . dispute[s] this*. He is not a Walmart employee. . . [T]he issue is appropriate for summary judgment." (Emphasis added). Additionally, the July 30, 2021 judgment stated that it was "[b]ased upon the motion, the argument of counsel, the entire record, and the law . . . . " Thus, the trial court's statements at the hearing and in the judgment indicate that the trial court reviewed the record and the evidence, not just the Security Agreement and the Addendum, in arriving at the

19

judgment granting the Motion for Partial Summary Judgment and dismissing Mr. Duronslet's claims against Walmart.

Considering the foregoing, Appellant's second assignment of error is without merit; and we turn to our *de novo* review of the record to ascertain whether it supports a finding that the deputy was an independent contractor.

***Assignment of Error Number Three: The trial court erred in finding that the Orleans Parish Sheriff's deputy was an independent contractor for whom Walmart had no liability.***

***Substantive Law: Independent Contractor***

In his third assignment of error, Mr. Duronslet asserts that the trial court erred in finding that the Security Agreement and Addendum were dispositive of whether the deputy was an independent contractor and in finding that the deputy was an independent contractor. He contends that the Security Agreement was insufficient to demonstrate that the deputy was an independent contractor because the deputy's work was not of an independent nature and Walmart retained the right to control the deputy. In particular, Mr. Duronslet contends that the deputy performed his work inside the Walmart store during operating hours; interacted with Walmart customers; and acted during the incident at the result of requests for assistance made by Walmart employees. Further, he asserts that Walmart retained the right to control the deputy because Walmart had the right to supervise and oversee the security services provided by U.S. Security. Additionally, under the theory of apparent authority, Mr. Duronslet argues that "the deputy held himself out as being able to act for [Walmart]."

As discussed regarding summary judgments, "[b]ecause it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Knox*,

20

2021-0419, p. 10, ___ So.3d ___, ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). Accordingly, to determine whether the trial court's grant of summary judgment in Walmart's favor was proper, we consider the substantive law concerning independent contractors.

### Employee versus Independent Contractor Factors

There exists "no hard and fast rule" to distinguish between an employee and an independent contractor; rather the distinction entails a factual determination that courts decide on a case-by-case basis. *Pilet*, 2020-0319, p. 9, 312 So.3d at 1161 n.18 (quoting *Tate v. Progressive Sec. Ins. Co.*, 2008-0950, p. 9 (La. App. 4 Cir. 1/28/09), 4 So.3d 915, 920). The label "independent contractor" indicates "a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants." *Id.* (quoting *Hickman v. S. Pac. Transp. Co.*, 262 So.2d 385, 390 (La. 1972)). As this Court has explained:

> The Louisiana Supreme Court has developed the following factors to help determine whether an individual is an employee or an independent contractor:
>
> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 262 So.2d 385 (1972).

*Id.*, 2020-0319, p. 10, 312 So.3d at 1161 (quoting *Chaisson v. La. Rock Monsters, LLC*, 2013-1423, pp. 3-4 (La. App. 4 Cir. 4/2/14), 140 So.3d 55, 57-58).

At trial, the burden of proof rests with the party seeking to establish an employer-employee relationship. *Hillman v. Comm-Care, Inc.*, 2001-1140, p. 9 (La. 1/15/02), 805 So.2d 1157, 1163. In the matter *sub judice*, Mr. Duronslet is the party seeking to establish an employer-employee relationship between Walmart and the deputy. Because Walmart does not bear the burden of proof at trial on this issue, in its Motion for Partial Summary Judgment, Walmart needed only to point out the absence of factual support for one of the elements demonstrating an employer-employee relationship for the burden of proof on the Motion for Partial Summary Judgment to shift to Mr. Duronslet. If so, the burden of proof on the Motion for Partial Summary Judgment then requires Mr. Duronslet to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Walmart was not entitled to judgment as a matter of law. With these burdens of proof, we review the evidence presented by Walmart and Mr. Duronslet in light of the factors that guide in distinguishing between an employee and an independent contractor.

**Factor (1) whether there is a valid contract between the parties; Factor (4) whether there is a specific price for the overall undertaking; and Factor (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.**

Notably, Mr. Duronslet does not dispute the first, fourth, and fifth factors. Regardless, our *de novo* review of the record supports a finding that these factors demonstrate that the deputy was an independent contractor. The Security Agreement satisfies the first factor (i.e., a valid contract between the parties) because it constitutes a valid contract between Walmart and U.S. Security. The Addendum satisfies the fourth factor (i.e., a specific price for the overall undertaking) because it lists the hourly rate for the security guards. Additionally,

the Security Agreement satisfies the fifth factor (i.e., the duration of work is for a specific time) because it states that it "shall be in force for one (1) year from the Effective Date . . . and shall continue thereafter on a month-to-month basis until terminated by either party" either with thirty days' written notice or by Walmart immediately in the event of a "material breach" by U.S. Security.

**Factor (2) the work being done is of an independent nature; and Factor (3) the contract calls for specific piecework as a unit.**

Instead, Mr. Duronslet's assignments of error focus on the second and third factors, namely whether the deputy's work was of an independent nature, such that he could employ non-exclusive means in accomplishing it, and whether the Security Agreement and Addendum called for specific piecework as a unit to be done according to the deputy's own methods, without being subject to the control and direction of Walmart, except as to the result of the services to be rendered. Mr. Duronslet contends that the deputy's work was not of an independent nature; that Walmart retained the right to control the deputy; and that the Security Agreement and Addendum do not call for a specific piecework as a unit to be done according to the deputy's own methods. As the Louisiana Third Circuit Court of Appeal has observed, "[f]actors two and three are generally discussed together and refer to the methods used to complete the project, the non-exclusiveness of those methods, and the degree of control exercised by the principal." *Simon v. Farm Bureau Ins. Co.*, 2019-0278, p. 6 (La. App. 3 Cir. 3/4/20), 297 So.3d 147, 151. Further, this Court has explained that "[t]he 'essence of the employer-employee relationship is the right to control.'" *Pilet*, 2020-0319, p. 10, 312 So.3d at 1161 (quoting *Chaisson*, 2013-1423, pp. 3-4, 140 So.3d at 57-58). "The primary factors evidencing the right to control are '1) selection and engagement, 2) payment of wages, 3) power of

dismissal and 4) power of control.'" *Id.* "None of the factors alone is determinative" though, and "the court must consider the totality of the circumstances." *Id.*

For example, in *Trichell v. McClure*, Payne T. Trichell returned home to the Indigo Park Apartments in Baton Rouge, Louisiana, and "took a golf cart for a joyride around the apartment complex[,]" at which time Baton Rouge City Police Officer Christopher McClure, who served as a "courtesy officer"[6] at the apartment complex, approached Mr. Trichell. 2021-1240, p. 2 (La. App. 1 Cir. 4/8/22), ___ So.3d ___, ___, 2022 WL 1053500, at *1. Afterward, Mr. Trichell attempted to flee on foot; and during an ensuing altercation, Officer McClure "used a takedown maneuver to subdue and handcuff" Mr. Trichell. *Id.* After Mr. Trichell instituted suit against him, Officer McClure asserted a third-party demand against the apartment complex, GAA-Nicholson Commercial, LP, d/b/a Indigo Apartments (hereinafter "GAA"); and Mr. Trichell subsequently amended his petition to name GAA as a defendant and alleged that GAA was liable for the actions of its employee, Officer McClure. *Id.* In response, GAA filed a motion for summary judgment, arguing that it was not liable for Officer McClure's actions because he was acting as an independent contractor at the time of the subject incident. *Id.* The trial court granted the motion for summary judgment, and the Louisiana First Circuit Court of Appeal affirmed that decision, noting that GAA provided Officer McClure with duties, including being on call for disturbances or safety related

---

[6] According to the opinion, an agreement between Officer McClure and the apartment complex's property manager "provided that as an independent contractor for the property management company, [Officer] McClure agreed to serve as the on-site courtesy officer for a monthly fee that was to be credited against [Officer] McClure's monthly rental obligation." *Trichell*, 2021-1240, pp. 5-6, ___ So.3d ___, ___, 2022 WL 1053500, at *3.

calls; walking and patrolling the property on a random basis; and assisting management with resident problems when requested. *Id.*, 2021-1240, p. 3, ___ So.3d ___, ___, 2022 WL 1053500, at *3. However, the Louisiana First Circuit Court of Appeal further explained that the methods and timing of completing those duties were within Officer McClure's control and performed without the accompaniment of GAA management or personnel. *Id.*, pp. 6-7, ___ So.3d ___, ___, 2022 WL 1053500, at *3. Additionally, the Louisiana First Circuit Court of Appeal observed that GAA did not provide tools or training to Officer McClure to perform these duties and that Officer McClure "handled the [subject] incident at his own discretion, according to his police training." *Id.* In upholding the trial court's grant of summary judgment, the Louisiana First Circuit Court of Appeal concluded that "[Mr.] Trichell failed to show that he would be able to bear his burden at trial of proving that [Officer] McClure, the alleged tortfeasor, was an employee of GAA." *Id.*, p. 9, ___ So.3d ___, ___, 2022 WL 1053500, at *4. *See also Butler v. Boutan*, 2014-1058, pp. 6-7 (La. App. 1 Cir. 12/23/14), 168 So.3d 501, 506-07 (wherein the Louisiana First Circuit Court of Appeal held that a deputy was an independent contractor, rather than an employee of a motel, noting that motel management did not direct the deputy to arrest anyone involved in the particular incident and that the deputy had complete authority to handle situations that might require removal of guests from the premises.)

In the matter *sub judice*, the Addendum called for U.S. Security to provide security services at Walmart by supplying a "permanent law enforcement officer" with "duties . . . to staff a post at the front entrance or periodically walk around the sales floor as directed by the store management team, providing a visible deterrent to criminal activity." Though the Addendum called for the duties to be performed

25

"as directed by the store management team," Officer McClure in *Trichell* likewise had a duty to "assist[] management with [] problems when requested;" yet this did not rise to the level of control contemplated by the jurisprudence on independent contractors. Further, like in *Trichell*, per the Security Agreement, Walmart did not provide the security guards with operating supplies and equipment. Rather, that was the responsibility of U.S. Security. Additionally, while the "Quality of Services" section of the Security Agreement provided that "[s]ervices must meet the approval of [Walmart] and shall be subject to [Walmart]'s general right of inspection and supervision[,]" that same section stated that "[d]ay-to-day and operational management of the [s]ervices shall be within the sole control of [U.S. Security]." The Security Agreement further connoted a degree of autonomy for the guards because it stated that the security guards "may take any precaution the security guard(s), *in their professional judgment*, determine is necessary to protect themselves, customers, and [Walmart] associates." (Emphasis added). Looking at the other sub-factors evidencing a right of control, in terms of 1) selection and engagement, 2) payment of wages, and 3) power of dismissal, the Security Agreement provides, respectively, that Walmart and U.S. Security are each "solely responsible" for hiring, paying, and firing their employees.

Though, as Mr. Duronslet contends, a "self-serving designation of 'independent contractor'" in a contract would not be sufficient if the principal actually retained control over an independent contractor, Mr. Duronslet's own deposition testimony fails to demonstrate that Walmart or its employees exercised control over the deputy during the subject incident. *See Suhor v. Medina*, 421 So.2d 271, 274 (La. App. 4 Cir. 1982). Mr. Duronslet testified that he "[did not] know" what brought the deputy to the scene and could not affirmatively say that a

26

Walmart employee asked the deputy to the scene of the incident or even that a Walmart employee was present during the altercation. He stated that he did not hear any Walmart employee request or suggest that the deputy physically contact him or put him in handcuffs. He further testified that the deputy alone physically escorted him to the security office and told him to sign the Notification.

Further, we acknowledge the statements in Mr. Duronslet's July 7, 2021 affidavit that the deputy's actions allegedly occurred in view of Walmart employees, who failed to intervene and thereby "tacitly consented to the [deputy]'s actions." However, this Court has held that "[a] subsequent affidavit in contradiction to prior deposition testimony is not sufficient to create an issue of fact precluding summary judgment without some explanation or support for the contrary statement." *Lebeau v. Saxon Mortg. Servs., Inc.*, 2018-0199, p. 9 (La. App. 4 Cir. 4/17/19), 269 So.3d 970, 976 (quoting *McCastle-Getwood v. Prof'l Cleaning Control*, 2014-0993, p. 7 (La. App. 1 Cir. 1/29/15), 170 So.3d 218, 222). As this Court has explained, "[t]his is to prevent the too easy thwarting of summary judgment procedure by the mere filing of an affidavit contradicting inconvenient statements found in previous deposition testimony when the mover [on the motion for summary judgment] has no opportunity to cross-examine the witness concerning the inconsistencies and the trial court is prevented from weighing evidence by the rules of summary judgment." *George v. Dover Elevator Co.*, 2002-0821, p. 4 (La. App. 4 Cir. 9/25/02), 828 So.2d 1194, 1197. The statements in Mr. Duronslet's subsequent July 7, 2021 affidavit contradict his prior July 20, 2020 deposition testimony. At his deposition, Mr. Duronslet testified that he "[did not] think" the deputy was standing with any Walmart employees when the deputy arrived at the scene; that he "[could not] answer" when asked whether

"any Walmart personnel [were] around" during the altercation; and that no Walmart employee was involved in his signing of the Notification. Because Mr. Duronslet does not offer any explanation in either his affidavit or elsewhere for his inconsistent testimony, we find that Mr. Duronslet's July 7, 2021 affidavit is not sufficient evidence to establish that he would be able to satisfy his burden of proof at trial on this issue. Thus, we conclude that Mr. Duronslet has failed to support his assertion that the deputy was an employee of Walmart.

***Apparent Authority***

Mr. Duronslet alternatively contends that Walmart is liable for the deputy's actions under the doctrine of apparent authority. In addition to a principal retaining liability for an independent contractor if the principal exercises control, another instance in which a principal remains liable for the actions of an independent contractor is if the principal has provided the independent contractor with apparent authority. Apparent authority is defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Indep. Fire Ins. Co. v. Able Moving & Storage Co., Inc.*, 1994-1982, p. 4, 650 So.2d 750, 752 (quoting RESTATEMENT (SECOND) OF AGENCY § 8 (1958)). The Louisiana Third Circuit Court of Appeal has explained:

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is

28

> reasonable for the third person to believe the agent is authorized and the third person actually believes this.

> . . . .

> Louisiana courts have utilized the doctrine of apparent authority to protect third persons by treating a principal who has manifested an agent's authority to third persons as if the principal had actually granted the authority to the agent.

*Grabowski*, 2014-0433, 2013-1409, pp. 21-22, 149 So.3d at 913-14 (quoting *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La. 1989)). The burden of proof rests with the party seeking to bind the principal. *Id.*, 2013-0422, p. 22, 149 So.3d at 914 (citing *Eakin v. Eakin*, 2007-0693, p. 6 (La. App. 3 Cir. 12/19/07), 973 So.2d 873, 877).

As discussed, Mr. Duronslet testified during his July 20, 2020 deposition that he did not hear any Walmart employee direct the deputy to make physical contact with him and to handcuff him. Additionally, when asked whether "any Walmart personnel [were] around" during the "altercation," Mr. Duronslet responded, "I [cannot] answer that." Thereafter, he testified that the deputy "wanted" him to sign the Notification and that no Walmart employee was involved in having him sign the Notification. When asked to clarify whether a Walmart employee was in the security office when he signed the Notification, Mr. Duronslet explained that "[t]here may have been somebody there, but there was not conversation, no interaction" and recalled that "they might have been there to put a coat on or something and then left." Mr. Duronslet's deposition testimony does not support his assertion that he reasonably believed that the deputy had the apparent authority to act on behalf of Walmart.

Again we acknowledge that in Mr. Duronslet's subsequent July 7, 2021 affidavit he stated that "[t]he actions of the deputy took place in full view of

[Walmart] employees who failed to intervene and who tacitly consented to the [deputy]'s actions;" "[t]here were [Walmart] employees in the [security] office" when he signed the Notification; that "[t]he [Walmart] employees all saw and heard everything that took place" in the security office; and that "[t]he tacit acceptance . . . by the [Walmart] employees indicated . . . that the deputy had the apparent authority to act on behalf of [Walmart] to restrict [Mr. Duronslet]'s access to any [Walmart] property." However, as noted previously, a subsequent affidavit that contradicts prior deposition testimony is insufficient to create an issue of fact so as to preclude summary judgment without some explanation or support for the contrary statements. *Lebeau*, 2018-0199, p. 9, 269 So.3d at 976 (quoting *McCastle-Getwood*, 2014-0993, p. 7, 170 So.3d at 222). Mr. Duronslet's statements in his July 7, 2021 affidavit contradict his prior deposition testimony from July 20, 2020; and he has not provided any explanation or support for the subsequent contradictory statements. Considering the foregoing, Mr. Duronslet's third assignment of error is without merit because he has failed to carry his burden of proving that he reasonably believed that the deputy had the apparent authority to act on behalf of Walmart.

Based upon our *de novo* review of the record, Walmart proved the absence of factual support for Mr. Duronslet's contention that the deputy was an employee of Walmart rather than an independent contractor, thereby shifting the burden of proof on the Motion for Partial Summary Judgment to Mr. Duronslet. In response, Mr. Duronslet failed to provide evidence sufficient to establish that he will be able to satisfy his burden at trial of demonstrating that the deputy was an employee of Walmart or that Walmart was liable for his actions because the deputy had

apparent authority to act on behalf of Walmart. Therefore, the trial court did not err in granting Walmart's Motion for Partial Summary Judgment.

## DECREE

For the foregoing reasons, the trial court's July 30, 2021 judgment, which granted Walmart's Motion for Partial Summary Judgment and dismissed Mr. Duronslet's claims against Walmart with prejudice, is affirmed.

**AFFIRMED**